The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, be seated, please. All right, the first case we're going to hear this morning, United States v. Brown, and Mr. Carpenter, we'll hear from you first. May it please the Court. We're asking this panel to remand this case for resentencing in light of Erlinger and to reject the government's harmless error arguments based on any one of three separate and independent rationales. What I'd like to do is to begin by very briefly identifying each of those rationales before then diving more into the details of So the broadest potential rationale is that the reasoning of Erlinger itself suggests that harmless error review is not appropriate in this context. The second rationale would be the middle ground position, that for the relatively small subset of Erlinger errors that also qualify as constructive amendments, this Court's precedent presumes prejudice. And then the third argument would be the narrowest, which is that if a case-specific harmless error inquiry is appropriate, the government cannot meet its burden in this case to show, beyond a reasonable doubt, that the outcome would have been the same but for the error. I would like to start with the middle ground position on constructive amendments, and I would like to start by clarifying or attempting to the relationship between constructive amendments on the one hand and apprendee errors on the other. And I think the best way to describe that relationship is through the classic Venn diagram of overlapping circles, because there are constructive amendments on the one hand that have nothing at all to do with apprendee. There are apprendee errors on the other that do not qualify as constructive amendments. But what we're dealing with, I believe, in this case... So just for an example, Whitefield is a constructive, at least as the Court understood Whitefield, Whitefield is a case about constructive indictment but not an apprendeer? No, Your Honor. Actually, Whitefield is in that middle of the Venn diagram. Okay, sorry. So if you look at pages 306 to 308 of Whitefield and footnote 14, the primary argument on the merits that the government addressed advanced there was that the death results finding was a sentence enhancement and not an element. This Court's first step in its analysis was to apply the apprendee line of cases, including Jones, to conclude that... There is no such thing as that distinction from a constitutional perspective, right? Like literally every case since Apprendi said, that is gibberish, that does not exist. Exactly. That was step one in the Court's analysis in Whitefield. And again, if you look at 306 to 308, it's applying those cases. Jones, footnote 14, cites Apprendi specifically and says, this is an element, it must be submitted to the jury. The Court then turns to what this means. And what it finds is when an element is not listed in the indictment but then is submitted and found later in order to apply an enhanced offense, an enhanced sentence, that is a prototypical or archetypal constructive amendment. And that is exactly what we have here because... The Supreme Court, I thought, has defined constructive error much more broadly. It has to be an error that permeates the entire case from front to back. And they have actually held that when an element is missing out of the indictment, you conduct a harmless error, a planned error, whatever the error analysis is and not resume prejudice. Sure. So I think, Judge Niemeyer, I understand you to be asking about structural error. And that is the broadest of the rationales. And I understand there are some hurdles to that argument that would require the Court to read cases like Netter and Rotrynko pretty narrowly. And so I'm happy to advance those arguments. That's what the Carlton case in New Jersey did do. But for the purposes of this case, or at least to begin, I'm focused on the narrower argument about constructive amendment. And this Court's precedent, including, most importantly, Whitfield, has said that if an error qualifies as a constructive amendment, prejudice is presumed. Let me ask you this. Does Brown contest the accuracy of the convictions below or did he? So the answer to that is yes, but it doesn't really matter. Our view is that at Joint Appendix page 53, our objection went to everything, including the facts. I recognize that in the initial panel opinion, it suggests that we didn't contest the accuracy of the dates, and we're okay to accept that. Because what we undoubtedly did and continue to do is to contest the occasions finding. That even if you accept that the dates of the prior convictions were separate, that does not equate to a single or a separate occasion under the Wooden test. Well, if we agree with you, where I think you're headed, aren't we setting up a circuit split? So I think I would need to clarify exactly where you think I'm heading, I guess. I would acknowledge if the broadest rationale one, the broadest structural error argument would be a circuit split. Harmless error analysis regardless. Yeah, so I think if you get to- Really arguments one and three, right? Right. I think argument two hasn't been addressed by any circuit. Sure, but arguments one and three would both create circuit splits. So I think three would not because the case, so both the Sixth Circuit and the Fifth Circuit since Erlinger have applied harmless error review. And so on step three, we would be doing that. Then it's a case-specific finding. And so I don't think we would be creating a circuit split with those decisions because we'd have different facts here than they had there. So I don't think it would be a direct split in that sense. I also think there's a threshold question in the harmless error analysis that neither of those, again, assuming we're on argument three, that neither of those courts addressed. And that's the question that I think was flagged by this court's notice about the Hayward case, which is, is the question here would a jury necessarily have convicted or because we're in a guilty plea context, is the question would he have taken a chance at trial on the occasion's determination? And we think that that is probably correct standard. I don't know if the case is even whether he'd take a chance at trial. I think the question is would he have pled guilty? In other words, and what we're talking about here, if I understand it correctly, is he's warned of the enhancement. What he's not warned of is that the enhancement has, at least for our purposes, two elements. One, a violent felony, which the court's going to find. And two, on different occasions, which the jury's going to find. And the question is, if he was alerted to that, would that have changed his plea? Would he have not pled guilty? And I think, I thought the Supreme Court recognized that, has recognized that difference in several cases, especially in Greer. I agree with that. And so I think then, Judge Niemeyer, the question is, if he had been aware that there was a jury trial right on the enhanced occasion's offense, would he have pled guilty to that offense? I think that's the question. Yeah, I think that's it. And I think, just to clarify, because it's a slightly strange posture with a baseline offense and enhanced offense, there's no doubt he accepted responsibility of the baseline offense. Having the firearm. Right, possessing the firearm after a felony conviction. He's confessing guilt to that offense. And he's also accepting, when he pleads guilty, that the district court is going to make the finding on whether his predicate offenses are violent felonies. Right, and so the question is, if he had known at that time that I have a jury trial right on this occasion's element, would he have taken that issue to trial? So can I separate? There's two errors here, right? Well, arguably, there's two possibilities for error here. There's an indictment error and there's a Rule 11 plea colloquy error, right? I would add a third with the constructive amendment, which could. I just view that as an indictment. The posit that I just had is an indictment error. There's an indictment error and there's a colloquy error. Now, let's start with what I think is good for your client, which is your client's indictment, as far as I recall, says nothing about the ACCA. That's correct. Nothing whatsoever about the ACCA. That seems like a real problem, especially under Whitefield. Yes. Except then there's the point, the plea colloquy, where the judge says to him, Sir, if you plead guilty, there's going to be a question about whether you have these three occasions. Yes. And I'm going to decide that, not a jury. And his lawyer doesn't object, at which point it strikes me that any error to the Rule 11 plea colloquy is totally forfeited. So I don't think that is correct. Why not? The judge said something. The judge, in the course of advising the defendant of what the consequences of pleading guilty are, says, no, no shade on the judge. This is pre-Erlinger. But in light of Erlinger, that was a legally incorrect statement during the plea colloquy. And to give some more grace to the judge, it's not as if a reasonably savvy defense counsel at the time could not have thought of this argument. That, like, actually, Judge, that's wrong. I object to you telling him that. I preserved that issue.  And I didn't. So I just want to, I think what you said is not any, no reasonably savvy defense counsel would have made that objection because this plea colloquy happened before even Rule 11. But none, okay, but hold on. Cotton, Johnson, we don't care that no reasonably savvy defense, like, you're charged with thinking of things that haven't happened yet. I agree. So I think there are two reasons that the lack of an objection in the middle of that Rule 11 colloquy should not affect preservation. Well, preservation of the guilty plea colloquy, not necessarily preservation of the indictment issue. Sure. I think both are preserved. Let me say why I think the Rule colloquy is preserved. I think it's preserved for two reasons. One is that the advice he's given is boilerplate. It's given in every 922 and G indictment. If you happen to have these things, you'll be subject to it. He was not informed in his indictment that the government was even alleging that in his case. So I think that's point one. He objected as soon as somebody told him, you have three objections that are subject to this. When that came out in the PSR, he objected immediately. The second reason is this is a bifurcated Rule 11 proceeding. If you look at Joint Appendix page 17, the guilty plea in this case is not accepted at the end of that hearing. It is solely recommended by the magistrate judge that the district court ultimately accept the plea. Before that plea is accepted on Joint Appendix page 24, where you see the district court judge accepts the factual basis, the objection is lodged by that point, that we believe we have a jury trial right on this thing you're seeking to apply. But you still plead guilty. Again, and there's no— It would have been a lot easier if this was just a conditional guilty plea. Sure, but I don't think that's—I think it's unfair to a defendant to expect that when you're preserving something in the face of not only adverse circuit precedent, but a wall of adverse precedent across every circuit. So I think that, you know, that is what makes this case a little different in its procedural posture, is I think he did everything he reasonably could have. Well, let's back up. In the actual plea in front of the magistrate judge, he was warned about three convictions. He was given—it was stated that if you have three convictions, it's a conditional warning if you have three convictions, and if—then you would potentially be subject to this. Well, nobody knows if that's what you have for sure. Well, yeah, I think the point is, yeah, he— Well, I guess he would have known if the indictment had mentioned that. He would have known—yes, exactly. And I think that is a big—and that's why this case looks a lot like Whitfield. If this were a case where the indictment said you're subject to 924E, you have three prior qualifying convictions, we would not have a constructive amendment error. This would not look like Whitfield. And so I think that is— I don't understand the constructive indictment. That involves a jury context where you go to a jury. Here we're pleading guilty. To me, the indictment provides notice and prohibits double jeopardy. Those are the real roles of the indictment. And here the indictment missed an element, but he's advised of the element that is facing him during the hearing. To me, the question then comes, would he have not pled guilty if he'd been given the fact that part of that enhancement had to go into a jury and part's going to the judge? Sure, and so if we accept that as the inquiry, I think there are three reasons why he would not have pled guilty to the occasions element and would have taken that aspect of this case to trial. Before you go there— Sure. In my simple mind, you use the word occasions in the date. Yes. The date is the offense of which the offense occurred. What's the occasion? So the occasions inquiry under Wooden is a multi-factor test that does not rely solely on the dates. And we see that in the jury verdicts. And then do we start parsing that? Would it have to be three months apart, a year apart? Do we have to do the whole thing? I don't think you do, Your Honor. I think that's exactly what the jury is for in this context. And that's what the—in Wooden itself, Justice Gorsuch wrote a concurrence saying, look, this test that we're setting out does not give juries instructions on what they do when these factors point in different directions. And that's precisely why he would have taken this to trial and taken a chance with a jury. And so the point here is because he was not advised, that he had the ability to take this to a jury, I think the inquiry, if it's would he have gone to trial, the answer is yes. He would have taken a chance. I want to give you a chance to respond to it. So Liggins is really bad for, like, everything you're saying right now. I assume the answer to that is that Liggins does not even acknowledge the existence of Whitfield and us under our one panel can't overrule another. You think we just disregard what Liggins says? I think—maybe slightly overstating it, but in that direction, I think the reason I think that Liggins doesn't control on the constructive amendment claim, yes, is that the defendant there did not present a constructive amendment error. If you look at footnote 18, the court says the presentation of the apprendi issue by defense counsel was, quote, far from clear. Based on the messiness of the briefing, it allowed the government—it excused the government's failure to argue harmless error, and so I think the court acknowledged, look, we are basically creating this apprendi argument for the defendant. But none of that would matter. What matters—maybe what matters is the court literally does not mention Whitfield. Yes. And so, again, if Whitfield is on point, which we think it is, it is the prior decision, and so the court would be bound by it. If we end up in the inquiry of would he have taken occasions to trial, I do want to quickly tick through the three things that I think suggest he would have. One is the contemporaneous objection. As soon as he was informed this is applying to you, he objected and said, I think I have a jury trial right here. That contemporaneous objection suggests that if that jury trial right had been available under precedent, he would have taken it up. The second factor is that he has a reasonable jury argument on the occasions issue, and I acknowledge Judge Floyd, assuming the dates are different, there are at least three of the factors under the Wooden Test that point in his favor. Those are the purpose, the character of the relationships, and the purpose and the character and also the relationship. On the relationship, I would highlight the state consolidated these, treated them as—imposed a single sentence. We think that's a strong argument for a jury. The third, if the court will allow me to quickly throw out the third, is his sentencing exposure is huge in this case. It's a big difference from a 15-year minimum to a 10-year maximum. The guidelines range of 90 months that cuts in half his exposure. Why not take the risk when you have that much to gain? That's why we believe he would have went to trial. All right, thank you, Mr. Carpenter. You have some rebuttal. All right, Mr. Enright. Thank you, Your Honor. May it please the Court, Anthony Enright for the United States. The Erlinger error in Brown's case is harmless under the Leggans standard or under the Hayward standard. Erlinger told us that it was applying the principles of apprendi in its holding, and Leggans holds that apprendi is subject to harmless error, as have a long line of cases going back 25 years. And it tells us that the way to conduct that analysis is ordinarily to examine whether if the missing element, in this case the different occasions element, had been submitted to a reasonable jury. Can this Court say beyond a reasonable doubt? Sure. Well, that makes total sense in the context of the question of whether there's a, at least for me conceptually, it's very important to distinguish between indictment errors and jury errors. That makes 100% sense to me in the context of jury errors. It doesn't seem to make any sense to me at all in the context of a guilty plea error. That question, framing the question what a jury would have done in a case where the defendant pleaded guilty and so there was no jury does not make any sense. Well, Your Honor, I think the error is ultimately the same because what the Court held in early, early… I don't think it is the same. I'm not even convinced constructive amendment is at issue because we don't have a jury context. What we have is an indictment and a guilty plea. I agree with you, Your Honor. And the error was not including in the indictment and not advising about the enhancement portion, one of the enhancement portions going to a jury and one going to a judge. I agree with that, Your Honor. The question is would he had it been listed in the indictment and he had been told that the other occasions would have been decided by a jury as opposed to the judge, would he have pled guilty? Yes, Your Honor. And I think their argument is that he should have been given the chance to… he might have because of the differential in the five-year… five-year differential incarceration, at least a minimum five-year differential would have caused him to go to trial. Yes, Your Honor. We agree that he should have been given a chance to take this to a jury trial but the error in this case that occurred… I'm not arguing with Your Honor at all. What I'm saying is I think we know how this would have come out had the choice been put to him because he was informed. Well, that's for an analysis between him and his attorney, not for the jury. Correct. The attorney could say if a judge ruled on this, it would go this way, but if a jury ruled on this, it would go that way, and I think we ought to take the jury shot. In other words, that type of discussion would have taken place, but we're not forecasting. We are not, as a judge court, forecasting what a jury would have done. We're forecasting whether he would have still pled guilty or not. Yes, Your Honor, and under that framework, the answer, we win because he told the court, the court told him, if you plead guilty today, there will be no jury trial. The court will decide it's sentencing, the rest of this, and he was told what might happen is the Armed Career Criminal Act might apply, your mandatory minimum will be 15 years, your statutory maximum will be life, and there will be no trial. Do you still want to plead guilty? And he said, under oath, yes. That is as good of evidence as you could ever give that. Well, I know, but he's not told that the jury not only decides your guilt under 922G1. That is true. The jury also determines an element of your enhancement. That is true, Your Honor. To the extent he wants to say that an error occurred, that an error was complete at the guilty plea, however, and that he would have reached that result, he needed to raise that at that time. He didn't, therefore, he needs to identify contemporaneous evidence that he would have gone the other direction. Then there's a forfeiture or forfeiture problem. Then we have a forfeiture or forfeiture problem because the last time we heard the government never suggested any of this was forfeited. Absolutely 100% true, and I'll tell you, I didn't even think this through until after we'd asked for re-hearing. I didn't think it was an appropriate time to raise a different framework. But I think either one, I can understand why this court might examine both frameworks, and I think under either one, the framework, we win. Can I ask you, so let's just, I'll just say, I'm far more troubled by the indictment problem than by the jury problem, than the plea follicle problem in this case. Certainly. Does the government have to, so I want you to posit a defendant who is, in fact, eligible for an ACCA enhancement. He, in fact, has three prior convictions that were, in fact, committed on three different occasions. Sounds familiar so far. He's being prosecuted under 920 for being a felon in possession, right? Yes, Your Honor. Does the government have to seek an ACCA enhancement? At this point, no, Your Honor. I mean, I just meant, as a matter of prosecutorial, I guess I think we can take judicial notice of the fact that the government routinely does not charge people with crimes that they are, in fact, guilty of, and routinely maybe does not seek indictments, sorry, enhancements that it could, in fact, get. Yeah, we have discretion to say we're not going to seek that, we're not going to present that to the grand jury. It's a little more complex in this case because, number one, the statute says he shall be sentenced if he has those conditions, and number two, the aspect, a big important aspect, is decided by the court in sentencing, and he has to do it. One element is now reserved to the jury under Erlinger. That makes it complex because that one element, the government could say we're not going to charge three different occasions. Correct, and that will tie the courts hands. And that would probably then eliminate the ACCA enhancement, right? Yes, Your Honor, and that gives us the discretion to do that. So that sort of follows up a little bit on what Judge Heitens was saying. And you don't have to include ACCA. Now, again, post-Erlinger, may I assume that the government is charging ACCA enhancements in the indictment, including that they were convicted on occasions different from one another? Yes, Your Honor. And so this case would be really easy then, right, because if the indictment said you're subject to sentencing under the ACCA, and you, in fact, committed three previous offenses on occasions different from one another, and you pleaded guilty to that indictment. You've admitted all the elements of the charge. You've admitted everything, and we can sentence you under the ACCA. So this is really, absent someone just screwing up, this is just a transitional problem, right? This is a problem of what we do about the pre-Erlinger cases that are working their way through the system. It is, and so it's a pretty limited – the case we have today, I think, affects a pretty limited case. Because going forward – I take Judge Niemeyer's point, but going forward, if the government just leaves ACCA out of the indictment, as a practical matter, this defendant is not getting an ACCA enhancement. Correct, Your Honor. Okay. So once we posit that, why isn't this case literally just Whitfield? Because – I mean, let me posit, Leggin seems very inconsistent with Whitfield to me. Whitfield's way of distinguishing Hibbs is not overwhelmingly persuasive to me. But it does distinguish him. It does. But the question is, this to me – let me just give you 30 seconds of why I think this case looks just like Whitfield. In both this case and in Whitfield, the indictment on its face has no problem. The indictment on its face is totally fine, right? Because in Whitfield, as the court concluded, the statute has three different crimes. The indictment charges two of them. That's fine. The government doesn't have to charge all three theories. So the indictment in Whitfield is in no way on its face defective. Same here. The indictment in this case is in no way on its face defective, unlike the case we're going to hear next, where the indictment, like, mentions the ACCA, but it doesn't really charge all the things it should under the ACCA. This indictment doesn't mention the ACCA at all. And the world is full of people who violate 922G who don't have three prior convictions. Correct. So there's nothing facially problematic about this indictment, just the same as there was nothing facially problematic about the indictment in Whitfield. And that seems important because Whitfield says that's a problem because the defendant could have looked at this indictment and thought, everything's fine. And then we get to this world where, like, whoa, whoa, whoa, what's just – so, yeah. With that framing, why isn't this case literally just Whitfield? I think there are a few differences with Whitfield, and I want to start with what Whitfield said, which is this is a different case than Higgs-type indictment error. And Higgs says we're in the arena of a prendy. Higgs was literally – he's convicted of murder. Like a ring error. Like, that's a ring error. A ring error. It's the same error I think we have here, honestly, which is he's convicted of an offense, and then the court – and then in this case it's a sentencing jury, but the question is what's his penalty going to be? Is it going to be life or death? They say that's a Higgs error, and the difference is it doesn't broaden the basis for a conviction. That's the posture in which we are here, because this court has held multiple times, back in several other cases, that ACCA is a sentencing enhancement. It's in the same posture as – You know what I'm about to say, right? There's no difference. Yes. But Higgs is the one – I'm sorry, Higgs. Whitfield is the case that draws the distinction. So if there is no distinction between a constructive amendment and a Higgs-type indictment error or an Apprendi error, then this court is bound by the Higgs line – or the Apprendi line of cases, which includes not just Higgs, but Higgs, Barnett, a case called Mackins that unfortunately – I honestly thought we had cited that up until this morning and realized we didn't cite it, but this is not something that Whitfield made up. It's like every other circuit that I think has addressed this and continues to maintain a distinction between the harmless error standard for Apprendi and the harmless error standard for constructive amendments, it treats them differently. And I do think the distinction is falsely nuanced, and there's many cases we can find, including Banks, which talked about Whitfield and really said there's no distinction between something that broadens the basis for a conviction and something that – once again, seems to be fighting the fundamental insight of Apprendi, which is that if you increase someone's sentencing range based on a fact, that fact is – for constitutional purposes, that is an element, whether you – I think that's absolutely right. The only arena I'm aware of where a distinction exists is in this part of Higgs that my friend relies on – I'm sorry, in the part of Whitfield that my friend relies on. If that distinction is no longer valid or is invalidated either by prior precedent or by subsequent precedent, like a lien, then this court is bound by the Apprendi line of cases. Can you point to any pre-Whitfield case that is not Higgs, I know Higgs, but other than Higgs, any pre-Whitfield case other than Higgs where this court concluded that an Apprendi error in the indictment, a preserved error in the indictment, is subject to harmless error review other than Higgs? Yes. United States v. Mackens, 315, Fed 3, 399, 2003. And this is pre-Whitfield. Pre-Whitfield, 2003. I honestly thought we cited it until this morning. Didn't cite it. It's that. Another one is United States v. Barnett, which we did cite. Both of those cases held that addressed an indictment error, an allegation indictment error under a preserved one and applied the harmless error standard. So even if for whatever reason Higgs doesn't apply, those cases do. And my friend has also introduced this idea that an alternative holding – the reason that Higgs wouldn't apply is because it's an alternative holding, saying that alternative holdings are dicta. Well, that guts Whitfield, too. So the question is, is legitimacy – No, no, no. I was going to say, so you're going to cite the cases in which we have said multiple times that alternative holdings are not dicta. But I think that's wrong, Your Honor, because there's earlier cases. Ford says where a court makes alternative holdings, each holding is binding precedent. That's what I'm saying. No, I was agreeing with you. Absolutely. But the problem that I run into is that I read Whitfield and Whitfield says that language in Higgs is dicta. Now, again, I might be inclined to disagree with that, but – It does say it's dicta, but then it distinguishes it. It says the circumstance we're talking about is not Higgs-type indictment error. In other words, Whitfield is telling us it's not discussing a Higgs-type indictment error. And so to the extent it's addressing that, it's addressing something different. There's the Apprendi line of cases. There's the constructive amendment line of cases. And they're very – they're narrowly different. But this one is squarely on the Apprendi line of cases because Erlinger tells us that. It tells us that. And I think the point – I don't think it can be overlooked that Higgs is simply not the only thing we need to distinguish. There's nothing that prevents, I think, the court in Leggans, which is really the question, is Leggans good law? There's nothing that prevents the court in Leggans from adhering to the same distinction that Whitfield is addressing. Whitfield says we're talking about something different. Leggans is saying we're not talking about Apprendi. Can I move you then to the question of let's posit for the sake of argument we're doing harmless error and now talk about how you operationalize harmless error in this context?  I'm very – so let me posit. I know all of the cases that say when examining whether an error is harmless, we look to the entire record. And what I understand those cases to be saying is just because the prosecutor said like something dumb at one point during their closing, we don't literally look at that one sentence. And just because one part of the judge's jury instructions were problematic, we look only at that one part. And just because a witness blurted out something on the stand, they probably shouldn't have been allowed to say it. We don't look at only that. We look at the whole record, which we normally mean the entire trial transcript, right? And the government moves from that to saying we can look at the PSR. And that seems like a big leap to me. Well, Your Honor, I think it's a matter of taking the Supreme Court of its word. It said that multiple times. It cited it in Netter. This court said the same thing. And every case, every case we have from other circuits has done that. They've looked at the entire record. We have the second, third, fourth. As of yesterday, the fifth, the sixth. Where in Netter? What's that? I always thought it was Nader, but go ahead. I know. I have no idea. I also don't. Go ahead. I apologize. You probably know better. What in that opinion says that we look at the PSR? It doesn't say we look at the PSR, but it relies upon von Ardsal, which says you look at the entire record to conduct the  We go back to that case. And what does that case tell me of the entire? Yes, I agree. We look at the entire record. The question is, what is the record? I agree that those cases are talking about, involve the trial. But first, the record has a meaning that is much broader than the trial. How do I know that? Because it's a well-established, defined term. What case tells me that in conducting harmless error review, I look at all the stuff as opposed to something else? Well, Your Honor, I don't think you can read entire record to mean everything except. That's the plain meaning of that term. I think it's entirely, and nadir, net or whatever, I think it's entirely sensible to say we look at literally everything that happened from the beginning of opening statements through the jury charge. All of that is the record. I don't know what says we look at things other than things that happened during the trial. But here, Your Honor, I suppose is the question of there's not any reason to draw that distinction because there was an error at the trial. The jury was told in nadir, for example, disregard this evidence. So it really doesn't make much difference. If this court can say… It makes all the difference in the world because the hypothetical question being asked in nadir is if the jury had been told you have to find materiality, what is the answer the jury would have given? It would be like, well, given all the evidence the jury heard, the jury is pretty clearly going to find materiality in this case. Fair enough, Your Honor. But this court can still make that prediction. The counterfactual is still the same. This court can look at the PSR. And the question isn't what would they say if they had the PSR. The question is does the record contain enough information that this court can predict with confidence that if the issue were submitted to the jury… Well, no. In this case, if the issue… If he were told, as Judge Niemeyer pointed out, the question is if he were told if you don't plead guilty, you'd have a right to have a jury trial. And one of the things you'd have a right to have a jury trial on is the ACCA issue, right? Would he have still said, yes, I'm guilty? And under that standard, I think this court could look at Hayward, where you look at the entire record to determine whether the defendant would have still pleaded guilty. This is an embarrassing statement I'm about to make. What is the record that we described in Hayward in your view? What do we view as being the record in Hayward? In that case, it included his statements during his plea colloquy. Absolutely sure. It included a letter he wrote to the court at sentencing, which I think is instructive. I always thought the record refers just to a record, which is what the clerk has maintained in the case. In other words, a clerk, of course, anything that's filed. Filed in the court. Filed in the case. Not in the chambers of the judge, but was filed with the clerk. That's the well-established. That's what I thought record is. That's what I understand the ordinary meaning of record to mean. And if the court meant something other than – if the court meant just what happened at trial, I would imagine it would use different record than – different language in saying the record as a whole. But wait, hold on. I'm not – Hayward's coming back to me. I'm talking about the Supreme Court. No, but Hayward's coming back to me because in Hayward, the government in Hayward tried to submit a post hoc affidavit saying, like, this is what was really happening. We're like, we are not considering any of that. You don't get to submit an appeal affidavit. I'm not saying anything that is not in the record as the court – under Rule 10 at least. Right, okay. But under Hayward – The PSR is part of the record. The PSR – to be fair, it wasn't the PSR. He had written a letter at sentencing. And this court considered the letter at sentencing to be relevant to whether he had established contemporaneous evidence. And I think that is informative here. The other thing I would mention is every other circuit to look at this has looked at sentencing information. The PSR and Shepard documents for the most part. Every single one of them has taken the entire record, the record as a whole statements from the Supreme Court, and applied them to Erlinger errors. That has addressed it. But that's a lot of courts. So the hypothesis here would be once you understand the question as being would he have pleaded guilty had he been reliably informed, I guess the hypothesis goes he's probably aware of the stuff. He wants to claim he wasn't aware of stuff in the PSR. He's welcome to claim he wasn't aware of it, but he probably was aware of the stuff in the PSR. And given that these facts are true and that we presume he probably knew them, he probably would have pleaded guilty. That would be like conceptually how you would do that?  Well, maybe not, Your Honor. I think the question ultimately would be would he – the big picture question is what can he point to that would tell this court that he wouldn't have pleaded guilty? That he would have said, whoa, whoa, whoa, I want to go to trial. Now that I understand I have a jury trial right on the occasion, I want to go to trial. That's probably a pretty broad universe. He needs to do something. My friend hasn't done that in this case. It's a little dicey because the burden's on you. And what you basically argue, I gather, is that there is no evidence to indicate that. But the burden's not on him to come forward. He may want to – That's correct. He may want to point to evidence, but the burden still is with you, isn't it? Yes, Your Honor, and the burden's with me. I think either way, if it's a preserved error, the burden's going to be with me either to prove that he would have pleaded guilty or that the jury would have reached the same result. And I think we meet that burden by showing overwhelming evidence. His offenses were 72 days apart and more than five years apart, separated by an intervening arrest in each case and involved different victims. That's overwhelming evidence that at least puts him into a position where, look, if you've got a reason you wanted to go to trial on this, you've got to point to something in the record, something some rational jury could have gone the other way or some contemporaneous evidence that says, look, this was really important to me. I would have definitely taken this to trial for perhaps idiosyncratic reasons. I do see my time is almost up, so I want to make sure I address any questions this Court may have. But what value would be put on the fact that he either did or did not move to withdraw his plea once he found out? I think that speaks volumes of the question. He was aware that there would be one more hearing, the sentencing hearing. He was aware that there would be no trial, and he was aware that the Court might apply ACCA, and that is true. And that occurred after he got his draft pre-sentence report that said, here are the offenses, and ACCA is likely to apply. The probation office believed ACCA was going to apply, and he didn't withdraw his plea. Did he put more weight on that issue in that case? I think so, Your Honor. The fact that he didn't withdraw his plea after he knew all the information that the ACCA was likely to apply speaks very highly to the fact that this was a harmless error. Under either because we didn't raise it, or because he didn't raise it, if he has the burden, or because we didn't raise it earlier because we have the burden. The fact that he didn't withdraw his plea after being informed that ACCA was going to apply, almost certainly at sentencing, shows that he would not likely have withdrawn his plea, or shows beyond a reasonable doubt that he would not have. He would have pleaded guilty either way. At that point, he's not informed about the Erlinger. Oh, yes, he is. No, he's not. Erlinger didn't come down until after. I'm sorry, Your Honor. I see I'm over time. Can I answer your question? He hadn't been informed of Erlinger, but he had raised this issue. So he was aware of the issue. He was aware that it was debatable. Mr. Highton's pointed out that as the law changes, you're still charged with the different, in terms of forfeiture, you're charged with the change in the law. Yes. Even though you may not have subjectively understood it at that point. Yes, that is absolutely true, and I see I'm over time. All right, thank you, Mr. Enright. Mr. Carpenter. Thank you, Your Honor. Judge Floyd, let me start with your question. And I think that Judge Niemeyer essentially gave the right answer to it, which is that the reason he didn't move to withdraw the guilty plea at that point was because he had no jury trial right under established precedent. And the distinction, Judge Niemeyer, that you drew is exactly the correct one. A defense lawyer is going to advise a client in this situation. You're much more likely to prevail in this kind of occasion with a jury than with a judge. I don't know if that would be the advice. Well, I can tell you it wouldn't. That is the advice you'd give? That is the advice we certainly give. And I think the other point to highlight for the court in terms of why there's no withdrawal of the plea at that stage is this plea was not only pre-Erlinger, it was also pre-Wooden, where the multi-factor test that Wooden developed that is much more defendant-friendly than the multi-factor test this court had previously applied in cases like Carr. Because Carr and Wooden are the exact same facts, break into the storage unit. He certainly did, but he had no jury trial right. And so I think the contemporaneous evidence that we point to in the record is the fact that we invoked the jury trial right in this objection, saying we believe we have a jury trial right. I think the implication there is if we're correct, we're taking this to a jury. So I think that's the contemporaneous evidence that we have, that he was aware and willing to go to a jury. And I think when you add the other factors on top of that, being the sentencing exposure and the fact that this is a reasonable jury argument, and I acknowledge the government has the dates in its favor, but the other factors are in our favor, or there's just an absence of record evidence about them. So if you compare the facts here to the facts in Pennington, where the jury acquitted on the occasions, those were convictions separated by four months, not just the two here. That's a case where they involved prosecutions in different jurisdictions, different counties. And yet the jury found that there was enough of a relationship between them that they constituted a single occasion. Here we have a lesser time gap. We have the same jurisdiction. And we have the state prosecuting them together at the end of the day, imposing a consolidated sentence. I think it's a compelling argument to a jury.  There is a suggestion in the record that there was an arrest, but it appears that if he was arrested, he was immediately released. Certainly that's a factor the government could point to in front of the jury saying, well, he was arrested, but I think a jury may not put much weight on that if he's arrested, processed, and immediately released. Again, this would be a question we believe worth taking to the jury. And so I think the three factors we would point to on that front, again, contemporaneous objection, huge difference in sentencing exposure, and a jury argument that is reasonable. And I would flag for the court, you know, the 11th Circuit, as we pointed out in the 28J, has been remanding cases with similar facts, where there are different dates, and yet they're saying, okay, there's a chance that, you know, we're sending this back. It's not harmless. You know, in the McCobb case, it was five dates spread out over between June and August. The Barner case were three dates, January, February, and April. The court is finding these not harmless and allowing defendants the opportunity to exercise their jury trial options. I have a couple of Whitfield questions. Yes. What do you say to your friend on the other side's argument that Whitfield itself was inconsistent with some pre-Whitfield cases that applied harmless error to Apprendi indictment errors? So I will have to look at Matkins and Barnett because I don't, as a counselor, I don't believe they were cited, and I'm not familiar with them off the top of my head. I think the key point, though, is that the Higgs distinction, which, I mean, they're relying on Higgs for a reason. I assume it's their best case. We'll see if the others say something different. But Higgs is... Whitfield does not distinguish Higgs because it's an Apprendi error because Whitfield itself is an Apprendi error. That's where I think the government keeps thinking it's not an Apprendi case. Again, if you go to Whitfield and look at pages 306 to 308, footnote 14, it's an Apprendi analysis. This is an Apprendi error. Okay, so second question about Whitfield. The second problem with Whitfield for me, how is it, like, huge amounts of what Whitfield said not just diametrically inconsistent with the United States versus Cotton? Like, all of this stuff about indictment. Like, Whitfield is basically repeating a lot of the stuff from Promise that Cotton is like, that is not how we do this. Well, so I think the reason it's not is because Cotton is a pronged four-plane error examination. No, no, no, no. At the beginning of Cotton, Cotton, like, before we get to pronged four, there's the part where, like, we are just going to dispense with this idea that indictment errors are just catastrophically bad. There's that first holding of Cotton. I agree with that. And then Whitfield says things that sound a lot like that. That may be true, but I think, and maybe my memory is wrong, and I apologize if it is, but my recollection is that Cotton specifically reserves the pronged three question. It does. Okay. Well, that was my recollection, too. Okay. So that is why we think that it would be different. The other thing to point out, in Higgs, the offense was charged. The death-eligible offense was charged in the indictment. It was simply an error with which aggravator, which is much more akin to an ordinary indictment error. And the final point I would make is Belcher is exactly in line with what Whitfield does. Belcher from the Sixth Circuit. So Whitfield is not any kind of outlier in that respect. All right. Thank you, Mr. Cotton. We'll come down and greet counsel. We're going to, Judge Floyd is not going to come down. He's greeting you from the bench right now. And Judge Hayden's Titans and I will come down with counsel in the next case.
judges: Paul V. Niemeyer, Toby J. Heytens, Henry F. Floyd